UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------,
CHERYLE WILLIAMS,

               *Plaintiff*,               **Memorandum & Order**

  -against-                    19-CV-2187 (KAM)(LB)

OCWEN LOAN SERVICING, LLC,

               *Defendant*.
--------------------------------------X

**MATSUMOTO, United States District Judge:**

        On April 15, 2019, *pro se* plaintiff Cheryle Williams ("plaintiff") commenced this action against Ocwen Loan Servicing, LLC, an entity succeeded through merger by PHH Mortgage Corporation ("defendant" or "Ocwen"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and Regulation Z of the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* (Compl., ECF No. 1.)  On November 15, 2019, plaintiff filed a motion for leave to amend her complaint, requesting permission to add a new defendant, Deutsche Bank, and asserting causes of action sounding in common law fraud and alleged violations of due process related to an allegedly fraudulent mortgage and mortgage assignment.  (*Id.;* Pl. Mem. in Support of Mot. to Amend ("Pl. Mot. to Am."), ECF No. 31; Am. Compl., ECF No. 32.)

        Presently before the court are two motions.  The first is a motion by defendant, seeking dismissal of the complaint

under Federal Rule of Civil Procedure 12(b)(6) for failure to
state a claim.  (Def. Mot. to Dis., ECF No. 26; Def. Mem. in
Support of Mot. to Dis. ("Def. Mem."), ECF No. 27.)  The second
is a motion by plaintiff, seeking leave to amend under Federal
Rule of Civil Procedure 15(a).  (Pl. Mot. to Am., ECF No. 30.)
For the reasons detailed below, defendant's motion to dismiss
this action is GRANTED and plaintiff's motion to amend is
respectfully DENIED.

## Background

I.    **Factual Background**

      a. **Relevant Actors and Entities**

      On February 7, 2005, Plaintiff Cheryle Williams, a New
York State resident, and non-party Dolores Williams, executed a
mortgage on 124 Skiff Avenue, Unit G-11, Vineyard Haven, MA
02557 ("plaintiff's property").  (*See* Compl. ¶¶ 12-13; Compl.,
Ex. A (the "mortgage assignment").)  On December 3, 2010, the
mortgage on the property was assigned from the original
mortgagee, Sand Canyon f/k/a Option One Mortgage Corporation
("Sand Canyon"), to Deutsche Bank.  (Compl. ¶ 12-13; Compl., Ex.
A.)  A judgment was entered in a case before the Massachusetts
Land Court, allowing Deutsche Bank to foreclose on that same
property.  (*Id.*; Pl. Aff., ECF No. 5; Pl. Mot. to Am. ¶¶ 9-14;

*Deutsche Bank Nat. Trust Co. v. Williams*, 18-SM-6098 (Mass. Land Ct. 2018).)

Although plaintiff named Ocwen as the sole defendant in her initial complaint, the proposed amended complaint seeks to add Deutsche Bank Trust Company ("Deutsche Bank") as Trustee for Carrington Mortgage Loan Trust, Series 2005-OPT2, Asset-Backed Pass-Through Certificate Series 2D05-OPT. (Am. Compl. ¶ 3.) Deutsche Bank brought a successful suit in Massachusetts Land Court to foreclose plaintiff's property. (Compl. ¶ 13; Pl. Mot. to Am. ¶ 10; *Deutsche Bank Nat. Trust Co.*, 18-SM-006098.) Deutsche Bank is also the assignee in the mortgage assignment attached to plaintiff's complaint. (Compl., Ex. A.) Ocwen is the "non-bank servicer" of the loan. (*Id.* ¶ 10.)[1]

### b. The Original and the Proposed Amended Complaint

The original complaint alleges that Ocwen attempted to collect on a mortgage debt owed to plaintiff in violation of the Fair Debt Collection Practices Act ("FDCPA") and the Truth in Lending Act ("TILA"). (Compl. ¶ 17.) The complaint attaches a copy of a mortgage assignment, dated December 3, 2010, from Sand Canyon to Deutsche Bank. (Compl., Ex. A.) Also attached is a "cease and desist" letter from plaintiff, dated August 17, 2018,

---

[1]  The pleadings and the state court docket further demonstrate that Deutsche Bank is the purported holder of the mortgage and the plaintiff in Massachusetts Land Court, with Ocwen acting as a servicer of the debt. (*Id.* at ¶¶ 10, 12-13; Pl. Mot. to Am. ¶¶ 9-14; *Deutsche Bank Nat. Trust Co.*, 18-SM-006098.)

alleging that the mortgage or mortgage assignment is fraudulent and disputing the validity of the debt. (Compl., Ex. B.) The complaint also attaches documents sent between Ocwen and plaintiff in the months prior to the May 1, 2019 foreclosure auction, including a "payoff quote" letter sent by Ocwen summarizing the outstanding balance. (*See* Pl. Aff.; Pl. Aff., Ex. A.) Finally, the complaint includes a "Commercial Affidavit," arguing that: "Banks can not Lend Credit;" the mortgage contract was without consideration; and that if defendant Ocwen does not respond within 30 days it must "agree to take no action against [plaintiff]." (Compl., Ex. C.)

In her proposed amended complaint, plaintiff alleges that the assignment of the mortgage from the original mortgagee, Sand Canyon, to Deutsche Bank, was invalid or "fraudulent." (*See generally* Am. Compl.; Pl. Mot. to Am.; Compl., Ex. A). Plaintiff mentions various regulatory actions taken by government agencies against Ocwen and Deutsche Bank in the past. (*See* Am. Compl. ¶¶ 8-27; Am. Compl., Ex. A.) Plaintiff also attaches a cease and desist letter from the Federal Reserve Board of Governors identifying certain compliance and risk management violations by Deutsche Bank and its affiliates. (*See* Am. Compl., Ex. A.) Plaintiff does not describe how this letter relates to the allegations or factual pleadings in the proposed amended complaint. (*Id.*) Plaintiff also attaches a 2010 letter

4

from a Florida attorney claiming that a number of parties, especially employees of an entity called Lender Processing Services, Inc., allegedly produced hundreds of thousands of fraudulent mortgage assignments for use in foreclosure actions. (*See* Pl. Mot. to Am., Ex. A.)  Plaintiff does not specify if or how the letter relates to the specific mortgage assignment challenged by the defendant that transferred the interest in the property from Sand Canyon to Deutsche Bank.  (*See* Compl., Ex. A.)

## II. Procedural History

Plaintiff filed this action *pro se* on April 15, 2019. (*See* Compl.)  Plaintiff filed a motion for a temporary restraining order and preliminary injunction, seeking a stay on a foreclosure auction scheduled for May 1, 2019, of the property located at 124 Skiff Avenue, Unit G-11, Vineyard Haven, MA 02557.  (Mot. for T. R. O. and Preliminary Injunction, ECF No. 4.)  This court subsequently denied the motion for injunctive relief.  (Notice of Proposed Order, ECF No. 6; *see* ECF Docket Order dated April 24, 2019.)  On November 5, 2019, defendant Ocwen filed the instant motion to dismiss for failure to state a claim.  (Def. Mot. to Dis., ECF No. 26.)  On that same day, plaintiff filed a motion for leave to amend the original complaint.  (Pl. Mot. to Am., ECF No. 30; Am. Compl., ECF No. 32.)

## **Legal Standard**

### I. Motion to Dismiss

On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts all well pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The court is not obligated to accept any legal conclusions as correct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive a motion to dismiss, the complaint must include "sufficient factual matter...to 'state a claim to relief that is plausible on its face,'" *Id.* at 663 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

For the purposes of deciding a 12(b)(6) motion the court may consider not only the pleadings themselves, but also "(1) documents attached to the complaint as an exhibit or incorporated in it by reference, . . . (2) matters of which judicial notice may be taken, or . . . (3) documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit," assuming these documents are "integral to the Complaint." *Chambers*., 282 F.3d at 153; *see*

*Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).  These documents "include[e] documents filed in a related state court foreclosure proceeding." *Harriott v. Nationstar Mortg*. LLC, 2018 U.S. Dist. LEXIS 141120, at *2 (E.D.N.Y. Aug. 17, 2018); *see Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings.")

## II. Motion to Amend

When considering a Rule 15 Motion to Amend, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Notwithstanding the liberality of the general rule, it is within the sound discretion of the court whether to grant leave to amend." *Copantitla v. Fiskardo Estiatorio*, Inc., 2010 U.S. Dist. LEXIS 33430, at *9 (S.D.N.Y. Apr. 5, 2010) (citing *John Hancock Mutual Life Insurance Co. v. Amerford International Corp*., 22 F.3d 458, 462 (2d Cir. 1994). "[A] *pro se* plaintiff's proposed amended complaint should be construed to raise the strongest arguments it suggests." *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013).

"Although district judges should, as a general matter, liberally permit *pro se* litigants to amend their pleadings,

7

leave to amend need not be granted when amendment would be futile." *Terry v. Inc. Vill. Of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  A proposed amendment is futile as a matter of law when it "fail[s] to state a claim on which relief could be granted." *Schmidt v. Stone*, No. 14-CV-2519 (RJD) (CLP), 2018 U.S. Dist. LEXIS 15048, at *17 (E.D.N.Y. Jan. 29, 2018).  As a result, in determining whether a proposed amended complaint would be futile, "[t]he court applies the same standard as that for a motion to dismiss under Rule 12(b)(6)...when deciding whether to grant leave to amend." *Id.* (citing *Konrad v. Epley*, No. 12-CV-4021, 2013 U.S. Dist. LEXIS 169091, 2013 WL 6200009, at *20 (E.D.N.Y. Nov. 25, 2013); *see Balintulo v. Ford Motor Co.,* 796 F.3d 160, 164-65 (2d Cir. 2015) ("A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss.")

## **Discussion**

The operative complaint charges that (1) Ocwen is a debt collector that violated the FDCPA; and (2) Ocwen also violated Regulation Z of the Truth-in-Lending Act.  Plaintiff seeks to amend the complaint to add Deutsche Bank as a defendant and allege that Deutsche Bank: (1) fraudulently assigned her mortgage; and violated her (2) "due process" rights for which she demands a five million dollar remedy.  For the foregoing

reasons, the court agrees with defendant that plaintiff's proposed amendment would be futile and thus denies plaintiff's motion to amend her complaint.

Plaintiff alleges that the assignment of the mortgage was invalid or otherwise fraudulent and, as a result, neither Ocwen nor Deutsche Bank had a right to collect on the loan. (Am. Compl. ¶¶ 30-35.)  Plaintiff alleges that Deutsche Bank failed to abide by the closing date in the Pooling and Service Agreement ("PSA") and that consequently, the mortgage assignment was invalid.  (Am. Compl. ¶¶ 37-43.)  Plaintiff also asserts the assignment she attached to her original complaint was forged. (Compl., Ex. A.; Am. Compl. ¶¶ 5-29; Pl. Mot. to Am., Ex. A.) The documents plaintiff attaches, however, largely fail to relate to the assignment of her mortgage and relate instead to regulatory and compliance deficiencies at Ocwen and Deutsche Bank. (*Id.*, Exhs. A, B.)  Finally, plaintiff asks for five million dollars in damages for an unspecified harm.  (*Id.* at ¶ 36.)  The court assumes the request for monetary damages is related to the alleged error in the assignments, fraud, or the unspecified violation of plaintiff's due process rights under the Fifth and Fourteenth Amendments, as alleged in the complaint.  (*Id.* ¶¶ 2-3.)  Defendants argue that plaintiff lacks standing to challenge the validity of a mortgage assignment, that the court lacks subject matter jurisdiction to disturb the

state court judgment pursuant to the *Rooker-Feldman* doctrine, and that plaintiff cannot sustain a fraud claim against defendant.  The court addresses each argument in turn.

## I. Futility of the Proposed Amendment
### a. Plaintiff Lacks Standing to Challenge the Validity of a Mortgage Assignment

Defendant argues that plaintiff lacks standing to bring a third-party challenge to the validity of an assignment, given that assignments are agreements to transfer a debt between two creditors that do not affect the obligation of plaintiff, the mortgagor, to pay.  (*See* Def. Reply, ECF No. 34 at 5-7.) The court agrees.  The only specific allegations plaintiff levels regarding the assignment's validity is that Deutsche Bank violated the closing date mandated by the Pooling Services Agreement ("PSA"). (Am. Compl. ¶¶ 37-43.)

Plaintiff does not have standing to allege violations of the PSA[2]. *See Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d

---

[2]    The property that is the subject of the assignment lies in Massachusetts. (Compl. ¶ 13.)  The law in the First Circuit occasionally allows for third-party challenges to assignments. *See Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 290 (1st Cir. 2013) (Finding standing since "a Massachusetts real property mortgagor finds herself in an unusual position because... Massachusetts law permits foreclosure without prior judicial authorization").  However, even the *Culhane* exception does not support standing for the instant plaintiff, because it is limited to cases where the mortgagor alleges the assignment is void. *Id.*  "[A] void mortgage assignment is one in which the putative assignor 'never properly held the mortgage and, thus, had no interest to assign.'"  *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 10 (1st Cir. 2014) (quoting *Culhane,* 708 F.3d at 291).  The exception does not apply when the plaintiff merely alleges that the assignment of the mortgage is "voidable."  *Woods v. Wells Fargo Bank, N.A.,* 733 F.3d 349, 354 (1st Cir. 2013) (Voidable claims are "claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement").

79, 84 (2d Cir. 2014) (noting that "[t]he weight of caselaw throughout the country holds that a non-party to a PSA lacks standing to assert noncompliance with the PSA as a claim or defense unless the non-party is an intended...third party beneficiary of the PSA")(citing *Rajamin v. Deutsche Bank National Trust Co.*, No. 10-CV-7531, 2013 WL 1285160, at *3-4 (S.D.N.Y. Mar. 28, 2013)); *Karamath v. U.S. Bank, N.A.,* 2012 WL 4327613, at *7 (E.D.N.Y. Aug. 29, 2012), *adopted by* 2012 WL 4327502 (E.D.N.Y. Sept.20, 2012) ("[P]laintiff is not a party to the PSA or to the Assignment of Mortgage, and is not a third-party beneficiary of either, and therefore has no standing to challenge the validity of that agreement or the assignment"); *Boco v. Argent Mortg. Co, LLC*, No. 13-CV-1165 (DLI)(CLP), 2014 WL 1312101, at *3 (E.D.N.Y. Mar. 31, 2014); *Berezovskaya v. Deutsche Bank Nat. Tr. Co.*, No. 12-CV-6055 (KAM), 2014 WL 4471560, at *8 (E.D.N.Y. Aug. 1, 2014) ("[E]ven assuming that

---

Here, plaintiff alleges the assignment is invalid because Deutsche Bank failed to abide by the closing date in the Pooling and Service Agreement. (Am. Compl. ¶¶ 37-43; Pl. Mot. to Am., Ex. A.) Plaintiff, however, does not allege that Sand Canyon, the original holder of the note and assignor to Deutsche Bank, never held the mortgage. (*Id.*) Though this court does not purport to issue a ruling on law in the First Circuit, on the facts alleged, plaintiff would likely not have a basis for standing even in Massachusetts. *See Halacy v. Wells Fargo Bank, N.A.*, No. CIV.A. 12-11447-TSH, 2013 WL 6152351, at *3 (D. Mass. Nov. 21, 2013) ("while a mortgagor has standing in limited circumstances to challenge an assignment of his mortgage, he cannot invoke the terms of PSA to challenge an otherwise valid assignment"); *Orellana v. Deutsche Bank Nat. Tr. Co.*, No. CIV.A. 12-11982-NMG, 2013 WL 5348596, at *5 (D. Mass. Aug. 30, 2013) ("[C]ourts have held that a plaintiff lacks standing to challenge an assignment to a trust that occurred after its closing date.") (internal quotation omitted). Moreover, Plaintiff has not explained whether her current allegation regarding the assignment was raised in the Massachusetts foreclosure action.

the transfer of the CEMA to the Trust took place after

the closing date set forth in the PSA, this would render the

transfer merely voidable at the election of either party to

the PSA, not void. Most importantly, this transfer is not

subject to a challenge by plaintiff, who is not a party to

the PSA."); *In re Lake Charles Retail Dev. LLC,* No. 13-44093

(NHL), 2014 WL 4948234, at *9 (Bankr. E.D.N.Y. Sept. 30, 2014)

(Finding that "because the Debtor predicates its claims for

relief on an alleged failure to comply with the PSA, the

Complaint is dismissed").

> The court agrees with defendant that plaintiff lacks
standing to bring a claim alleging a violation of the PSA, and
thus her motion to amend would be futile.

### c. The Court Lacks Subject Matter Jurisdiction Pursuant to the *Rooker-Feldman* Doctrine

> Plaintiff argues in her proposed amended complaint
that Deutsche Bank lacked standing to bring the Massachusetts
foreclosure action and asks this court to effectively invalidate
the state court proceeding.  (Compl. ¶ 13; Am. Compl. ¶¶ 29, 36,
48.)  A judgment was entered against plaintiff in Massachusetts
Land Court on December 14, 2018, about five months before the
commencement of this action.  (*See Deutsche Bank Nat. Trust Co.*,
18-SM-006098; Compl. ¶ 13; Pl. Mot. to Am. ¶ 10.)  To the extent
that plaintiff requests that this court exercise jurisdiction

over any issue in the Massachusetts Land Court adjudication,
this court lacks subject matter jurisdiction pursuant to the
*Rooker-Feldman* doctrine.  "Four requirements must be met for the
doctrine to apply: (i) the federal court plaintiff must have
lost in state court, (ii) the plaintiff must complain of
injuries caused by a state court judgment, (iii) the plaintiff
must invite district court review and rejection of that
judgment, and (iv) the state court judgment must have been
rendered before the district court proceedings commenced."
*Pennicott v. JPMorgan Chase Bank, N.A.*, No. 16 CV 3044 (VB),
2018 WL 1891312, at *3 (S.D.N.Y. Apr. 18, 2018).  All of the
foregoing factors are satisfied here.

    The court must dismiss plaintiff's claim that Deutsche
Bank lacked standing or was otherwise ineligible to bring the
state court foreclosure action.  *See Rockwood v. Cenlar FSB,* No.
17-CV-10153 (VB), 2018 WL 2122820, at *3 (S.D.N.Y. May 8, 2018)
("*Rooker-Feldman* bars claims that ask a court to find a
defendant lacked standing to pursue foreclosure in a prior state
court action, because such claims require a court to sit in
review of the state court judgment.").  The allegations of fraud
in relation to allegedly forged documents are also the exact
type of collateral attack prohibited by *Rooker-Feldman*.  *Gifford
v. United N. Mortg. Bankers, Ltd.*, No. 18-CV-6324(PAE)(HBP),
2019 WL 2912489, at *8 (S.D.N.Y. July 8, 2019) ("[P]laintiff's

allegation that defendants engaged in fraudulent conduct by presenting the state court with allegedly 'void' and 'forged' documents does not save her proposed fraud claims because 'if the court were to accept the plaintiff's claim that the loan documents were forged, the court's ruling would necessitate a finding that the judgment of foreclosure and sale was erroneously entered, and thus, void which ... is precisely the result that the *Rooker-Feldman* doctrine seeks to avoid.'") (quoting *Ashworth v. Boggio*, 15-CV-948 (JFB)(ARL), 2016 WL 4398956 at *5 (E.D.N.Y. July 26, 2016) (Report & Recommendation), *adopted at*, 2016 WL 4399311 (E.D.N.Y. Aug. 15, 2016)). Because this court lacks jurisdiction to consider and rule on matters that were decided by an earlier state court proceeding, plaintiff's claims are futile and her motion to amend is denied.

### c. Fraud Claims

Plaintiff makes a series of fraud claims throughout her proposed amended complaint against both Deutsche Bank and Ocwen. (*See generally* Am. Compl.) Plaintiff alleges that the signatures on the mortgage assignment to Deutsche Bank were "forged" and alleges in conclusory language that Deutsche Bank has engaged in fraud. (Am. Compl. ¶¶ 30-32.) In support of her claim, plaintiff references a series of regulatory actions against the original and proposed defendants. These include an

14

investigation by the Multi-State Mortgage Committee, which found deficiencies in Ocwen's management and regulatory compliance systems. (Am. Compl. ¶¶ 7-24.) Plaintiff also references a lawsuit filed by the Consumer Financial Protection Bureau against Ocwen. (*Id.* ¶¶ 25-28.) Plaintiff does not explain the connection between these government actions and the instant case other than to allege that they "go[] to the credibility of Defendant Ocwen." (*Id.* ¶ 27.) Plaintiff attaches a cease and desist order filed by the Federal Reserve Board of Governors identifying shortcomings in Deutsche Bank's risk management practices. (Am. Compl., Ex. A.) In plaintiff's memorandum in support of her amendment, she includes a letter written by one Lynn E. Szymoniak, Esq. to the Securities and Exchange Commission in 2010. (Pl. Mot. to Am., Ex. A.) This letter alleges that a mortgage default management company had its employees masquerade as employees of lenders, including Deutsche Bank and Sand Canyon, in order to fraudulently recreate lost or invalid assignments. (*Id.*) The letter does not allege that the lenders themselves committed fraud, but instead that companies they hired to process assignments conducted the fraud by creating documents that were not "in recordable form." (*Id.*) The letter claims the Trusts would have to incur millions of dollars replacing fraudulent assignments or litigating foreclosure cases where there were missing assignments. (*Id.*)

The letter also makes legal arguments that these assignments would be insufficient to enforce a foreclosure action. (*Id*.) There is no discernable, specific connection between the 2010 letter and the instant case.

Plaintiff's proposed amended pleading is insufficient to state a fraud claim under New York law. The elements of a common law fraud claim are: "(1) a material, false representation, (2) an intent to defraud thereby, and (3) reasonable reliance on the representation, (4) causing damage to the plaintiff." *Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 509 (E.D.N.Y. 2014) (quoting *Chanayil v. Gulati,* 169 F.3d 168, 171 (2d Cir.1999)); *see also Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 357 (1st Cir. 2013). Reading the proposed pleading in the light most favorable to the *pro se* plaintiff, plaintiff argues that the assignment of the mortgage was fraudulent or that the mortgage itself was fraudulent, and supports that assertion with the "false representation" of the assignment document. (*See* Compl., Ex. A.) Plaintiff has not, however, presented particularized facts that could support a claim that Ocwen or Deutsche Bank made material false representations to her, had "intent to defraud" her, or that she "reasonably relied" on their representations, and provides no specific explanation of what damage she suffered other than the foreclosure action in state court. (Am. Compl. ¶ 29.)

Furthermore, plaintiff has not pled the elements of a fraud claim with sufficient particularity.  "Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard...requiring that ... [p]laintiffs' allegations must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent" for each element of the fraud claim.  *Zutel v. Wells Fargo Bank, N.A.*, No. 12-CV-3656 (RRM)(VMS), 2014 WL 4700022, at *6 (E.D.N.Y. Sept. 22, 2014) (internal quotation omitted); *see* Fed. R. Civ. P. 9(b).  Plaintiff has failed to meet this standard in her current and proposed amended complaints.  *See Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 119 (E.D.N.Y. 2015) ("Plaintiffs...merely assert in a conclusory fashion that the copies of the documents sought to be recorded...were forgeries. Thus...Plaintiffs fail to state a claims [sic] for forgery, and [the court] grants Defendant's motion to dismiss..."); *Levin v. Am. Document Servs., LLC*, No. 17-CV-1285 (JMA)(AYS), 2019 WL 3883640, at *8 (E.D.N.Y. June 25, 2019), Report and Recommendation adopted, No. 17-CV-1285 (JMA)(AYS), 2019 WL 3859402 (E.D.N.Y. Aug. 16, 2019) ("Plaintiffs base their claim of fraud on their contention that the assignment 'bears false signature.' However, Plaintiffs are not parties or beneficiaries to the assignment...Thus,

misrepresentations as to the manner of assignment would not make any difference.").

Plaintiff's motion to amend to include claims of fraud and is futile and therefore denied.

## II. Defendant's Motion to Dismiss FDCPA and TILA Claims in the Operative Complaint

Having denied plaintiff's motion to amend for futility, the court next evaluates defendant's motion to dismiss plaintiff's operative complaint.  Because plaintiff fails to state a claim for reasons to be discussed, defendant's motion to dismiss is granted.

### a. Fair Debt Collection Practices Act Claim

In the context of the FDCPA, the court evaluates debt collection communications from the perspective of the "least sophisticated consumer."  *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) ("[T]he test is how the least sophisticated consumer — one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer — understands the notice he or she receives"); *Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 90 (2d Cir. 2008) ("The purpose of the least-sophisticated-consumer standard, here as in other areas of consumer law, is to ensure that the statute protects the gullible as well as the shrewd.").

Debt collectors may be liable for failing to meet the statutory requirements for debt collection letters or for sending "false or misleading" communications to the debtor.  15 U.S.C. § 1692g(a)-(b); 15 U.S.C. § 1692e.  Liberally construing plaintiff's pleadings as the law requires, plaintiff appears to attempt to allege violations of 15 U.S.C. § 1692g and 15 U.S.C. § 1692e in her complaint. (*See* Compl. ¶¶ 14, 18.)

"To state a claim under the FDCPA, a plaintiff must allege that (1) plaintiff is a consumer, (2) defendant is a debt collector, and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements."  *Fraser v. Aames Funding Corp*., No. 16-CV-448 (AMD)(LB), 2017 U.S. Dist. LEXIS 10491, at *11 (E.D.N.Y. Jan. 23, 2017).  First, the parties agree that plaintiff is a "consumer" under the meaning of the statute. (Compl. ¶ 1; Def. Mem. at 5.)  "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." (15 U.S.C. § 1692(a).

Second, typically the owner of a mortgage cannot be considered a debt collector under the FDCPA because "the FDCPA limits its reach to those collecting the dues 'of another' and does not restrict the activities of creditors seeking to collect their own debts." *Somin v. Total Cmty. Mgmt. Corp*., 494 F. Supp. 2d 153, 159 (E.D.N.Y. 2007) (citing *Maguire v. Citicorp Retail Services, Inc.,* 147 F.3d 232, 235 (2d Cir.

19

1998)).  Ocwen could be considered a debt collector if it was servicing a debt that was not its own and if that debt was in default at the time it was assigned.  *In re Jacques*, 416 B.R. 63, 75 (Bankr. E.D.N.Y. 2009) ("[T]he FDCPA does not apply to mortgage servicing companies *unless* the mortgage at issue was already in default at the time when servicing began") (emphasis added); *Cummins v. Select Portfolio Servicing, Inc.*, No. 14-CV-5121 (MKB)(LB), 2016 U.S. Dist. LEXIS 113565, at *17 (E.D.N.Y. Aug. 23, 2016) ("[A]n entity collecting or attempting to collect any debt owed to another is treated as a debt collector if the debt sought to be collected was in default at the time the debt was obtained.").  The pleadings allege that Ocwen serviced the debt on behalf of Deutsche Bank.  (Compl. ¶ 10; *see generally* Am. Compl.)  The original complaint alleges that the mortgage was in default on the date Ocwen attempted to collect on it. (Compl. ¶¶ 12-13.)  Although the complaint claims that defendant "attempted to collect...after default," plaintiff does not specify when plaintiff defaulted or when Ocwen attempted to collect.  (*Id.* ¶ 12.)  While unclear, plaintiff may be referencing a debt collection letter not provided in the pleadings, which she references in an August 17, 2018 cease and desist letter.  (Compl., Ex. B.)[3]  Construing the complaint in

---

[3]    **P**laintiff may also be referencing a letter dated February 19, 2019, sent by Ocwen shortly before the foreclosure auction, summarizing her outstanding mortgage balance in a "payoff quote" letter with language in the footer

the light most favorable to the plaintiff, it is "plausible" that Ocwen is a debt collector under the definition of the act. *See, e.g., Pereira v. Ocwen Loan Servicing, LLC.*, No. 11-CV-2672 (SJF) (ETB), 2012 U.S. Dist. LEXIS 56044, at *7 (E.D.N.Y. Mar. 12, 2012) (given a dearth of information about the status and ownership of the debt, the court found it "plausible that Ocwen was servicing the mortgage loan and is therefore considered a debt collector within the meaning of the FDCPA.").

Third, drawing all favorable inferences that plaintiff is a consumer, and that Ocwen may be considered a debt collector, plaintiff has failed to sufficiently plead that "the defendant has engaged in any act or omission in violation of FDCPA requirements" under 15 U.S.C. § 1692g.  *See Fraser*, LEXIS 10491, at *11.  Section 1692g "was enacted to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010) (internal quotations omitted).  In order to prevent such errors, Section 1692g(a) requires that a proper debt collection notice include the following information:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the

---

indicating that Ocwen is attempting to collect on the debt.  (*See* Pl. Aff., Ex. C.)

> debt, or any portion thereof, the debt will be assumed
> to be valid by the debt collector; (4) a statement
> that if the consumer notifies the debt collector in
> writing within the thirty-day period that the debt, or
> any portion thereof, is disputed, the debt collector
> will obtain verification of the debt or a copy
> of a judgment against the consumer and a copy of such
> verification or judgment will be mailed to the
> consumer by the debt collector; and (5) a statement
> that, upon the consumer's written request within the
> thirty-day period, the debt collector will provide the
> consumer with the name and address of the original
> creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Plaintiff fails to make any specific

allegations about any alleged deficiencies in any debt

collection document(s). (*See generally* Compl.) Plaintiff

provides her own cease and desist letter, dated August 17, 2018,

the first sentence of which asserts "you have chosen not to

respond to my request for a valid proof of claim." (Compl., Ex.

A.) Plaintiff also attaches a "Payoff Quote" sent by Ocwen on

February 19, 2019, that allegedly functioned as an attempt to

collect a debt against the instant property. (Pl. Aff., Ex. C.)

However, it appears that the funds to be reclaimed were against

the property itself before the foreclosure auction and after a

judgment was entered in state court in the foreclosure action.

*Id*. As the court previously held, the court lacks jurisdiction

to consider collateral challenges to state foreclosure

proceedings. (*See* ECF Docket Order dated April 24, 2019.)[4]

---

[4]    This is afforded more thorough treatment in this court's discussion of
the *Rooker-Feldman* doctrine, *supra*.

Further, plaintiff has not alleged that she disputed the debt within the thirty day window. In order to dispute the validity of a debt under § 1692g, a plaintiff must dispute it within thirty days of receipt of the collection letter. 15 U.S.C. § 1692g(a)(3); *Ritter v. Cohen & Slamowitz, LLP*, 118 F. Supp. 3d 497, 500 (E.D.N.Y. 2015). Even drawing a favorable inference that plaintiff in fact disputed the validity of the debt she referenced in her August 17, 2018 letter, she supplies no dates for defendant's response. (Compl., Ex. B.) This deficiency is fatal to plaintiff's claim. *See Bonner v. The Bank of New York Mellon*, No. 15-CV-3280 (SJF)(GRB), 2016 WL 1426515, at *4 (E.D.N.Y. Feb. 22, 2016) ("[A]lthough [plaintiff] alleges that he repeatedly requested that the Collection Defendants verify the questioned debts, he does *not* allege that he made any of these requests within the thirty day time window ...Without such factual pleading, it is entirely speculative, and not 'plausible,' that Plaintiff has a cognizable claim) (quoting *Agu v. Rhea*, No. 09-CV-4732 (JS)(AKT), 2010 WL 5186839, at *5 (E.D.N.Y. Dec. 15, 2010).

Plaintiff sent a "Conditional Acceptance for Value and Counter Offer/Claim for Proof of Claim" asking for confirmation of the validity of a claimed debt on April 1, 2019. (Pl. Aff., Exhs. C, D.) Plaintiff claims defendant sent her a collection notice on March 1, 2019, exactly one month before plaintiff's

23

April 1, 2019 letter.  (Pl. Aff., Ex. C.)  Plaintiff, however,
proffers Ocwen's February 19, 2019 letter, assuming it can be
construed as a collection notice, informing plaintiff of her
outstanding mortgage balance.  (*Id.*)  When considering a motion
to dismiss, "[i]f a document relied on in the complaint
contradicts allegations in the complaint, the document, not the
allegations, control[s], and the court need not accept the
allegations in the complaint as true." *Roberts v. Bliss*, 229 F.
Supp. 3d 240, 248 (S.D.N.Y. 2017) (quoting *Poindexter v. EMI
Record Grp. Inc.,* No. 11-CV-559, 2012 WL 1027639, at *2
(S.D.N.Y. Mar. 27, 2012)).  Consequently, the court finds that
even if the court were to construe defendant's February 19, 2019
letter as a collection notice, plaintiff did not respond until
April 1, 2019, well outside the thirty day window.

       The court also cannot find that the plaintiff
plausibly alleges "[t]he use of any false representation or
deceptive means to collect or attempt to collect any debt or to
obtain information concerning a consumer" by defendant.  15
U.S.C. § 1692e(10); *Easterling v. Collecto, Inc.*, 692 F.3d 229,
233 (2d Cir. 2012)(under the least sophisticated consumer
standard "collection notices can be deceptive if they are open
to more than one reasonable interpretation, at least one of
which is inaccurate").  The cease and desist letter sent by
plaintiff to defendant cannot serve as the basis for a claim,

since "[t]he FDCPA's protections are not triggered by communications initiated by someone other than the debt collector." *Boyd v. J.E. Robert Co.*, No. 05-CV-2455 (KAM)(RER), 2010 WL 5772892, at *13 (E.D.N.Y. Mar. 31, 2010).

Because plaintiff cannot state a claim on which relief can be granted, defendant's motion to dismiss plaintiff's FDCPA claims is granted.

### b. Truth in Lending Act Claim

Plaintiff alleges a violation of Regulation Z of the Truth in Lending Act ("TILA") by defendant, stemming from defendant's purported failure to respond to plaintiff's letters seeking validation of funds and other unspecified failures to disclose information.  (Compl. ¶ 17.)  These are substantially the same facts that underlie plaintiff's FDCPA claim.  (*See generally, id.*)  It is unclear what remedy plaintiff seeks for the alleged violation of TILA, although the court, reading the pleadings in the light most favorable to the plaintiff, assumes that plaintiff is seeking to rescind the loan and/or claim monetary damages.  (*Id.* ¶ 17.)

First, plaintiff's TILA claim is time barred. Borrowers have an unconditional right to rescind particular types of loans up to three days after the loan transaction is consummated.  15 U.S.C. § 1635(a); *see Smith v. Wells Fargo Bank, N.A.*, 666 F. App'x 84, 85 (2d Cir. 2016).  If plaintiff

alleges that the disclosures required by statute were never provided, she may assert a claim for rescission within three years after the closing. *Id.* at § 1635(f); *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259, 260 (2015). The documents provided in the pleadings indicate that the instant loan was closed on February 7, 2005, over 14 years before the commencement of this suit. (Compl., Ex. A.) Plaintiff's TILA claim for recission is well outside of the eligible time window[5].

The statute of limitations may not be tolled in this case. "Equitable tolling is available in 'rare and exceptional circumstances,' where the court finds that 'extraordinary circumstances' prevented the party from timely performing a required act, and that the party 'acted with reasonable diligence throughout the period he sought to toll.'" *Williams v. Aries Fin., LLC*, No. 09-CV-1816 (JG)(RML), 2009 WL 3851675, at *6 (E.D.N.Y. Nov. 18, 2009)(alterations omitted) (quoting *Walker v. Jastremski,* 430 F.3d 560, 563 (2d Cir.2005)). Equitable tolling is only available when: "(1) the defendant

---

[5]     The right of rescission under the Truth in Lending Act is not available for residential mortgages. *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 284 (S.D.N.Y. 2011) (citing *Ng v. HSBC Mortg. Corp.,* No. 07-CV-5434, 2010 WL 889256, at *2 (E.D.N.Y. Mar. 10, 2010)). However, because plaintiff does not specify whether she bought and intended to use the property as a home, the court cannot dismiss on this ground alone. *See Nembhard v. Citibank, N.A.*, No. 96-CV-3330, 1996 WL 622197, at *2 (E.D.N.Y. Oct. 22, 1996) ("[S]ince the complaint itself and the loan documents submitted as exhibits to the complaint *unambiguously* state that the funds were used to finance the acquisition of the home ... to be occupied by the plaintiff," there is no right of rescission under TILA) (emphasis added).

wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999). "In cases involving TILA, 'the courts have held uniformly that fraudulent conduct *beyond the nondisclosure itself* is necessary to equitably toll the running of the statute of limitations*.'"* *Cardiello v. The Money Store, Inc*., 2001 WL 604007, at *5 (S.D.N.Y. June 1, 2001) (emphasis added) (quoting *Pettola v. Nissan Motor Accept. Corp.,* 44 F.Supp. 2d. 442, 450 (D.Conn.1999)); *Grimes,* 785 F. Supp. 2d at 284; *Gonzalez v. J.P. Morgan Chase Bank, N.A.*, 228 F. Supp. 3d 277, 291 (S.D.N.Y. 2017). Plaintiff has provided no facts showing or supporting an inference that defendants violated the disclosure requirements of TILA, let alone facts which show fraudulent concealment beyond the TILA violations. (*See generally* Compl.)

Plaintiff also has no damages remedy. A borrower seeking monetary damages under TILA must file suit "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Again, plaintiff entered into her mortgage agreement in February 2005, over fifteen years ago. (Compl., Ex. A.) Although plaintiff does not specify what disclosure

violations defendant committed or when, "[i]t is well-settled law that where a claim for damages under TILA is premised on the failure to provide material disclosures, 'the date of the occurrence of the violation is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs.'" *Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 108 (E.D.N.Y. 2011) (citing *Cardiello v. Money Store, Inc.,* No. 00-CV-7332, 2001 WL 604007, at *3, *aff'd,* 29 Fed. App'x 780 (2d Cir. 2002)).  Plaintiff also cannot argue that the "recoupment" exception to the statute of limitations applies because "in order to bring a claim for damages after the one-year limitations period has expired, plaintiff must assert her damages claims as a defense by recoupment 'in a collection action brought by the lender.'"  *Id.* (*citing Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998)).  Here, the plaintiff borrower filed suit against the defendant lender, and so the recoupment exception does not apply.  *Id.*

Again, the doctrine of equitable tolling does not apply, as plaintiff has made no allegations of fact regarding the required elements.  *See Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 578 (E.D.N.Y. 2011) ("[E]quitable

tolling may be appropriate where, for instance, the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct ...'") (quoting *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990); *Latouche v. Well[s] Fargo Home Mortg. Inc.*, No. 16-CV-1175 (ERK), 2017 WL 8776975, at *7 (E.D.N.Y. Aug. 25, 2017) ("To survive a motion to dismiss an otherwise untimely TILA claim, the pleading must first allege, *with specificity*, efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent ... the plaintiff from suing in time.") (emphasis added) (internal quotation omitted).

Accordingly, defendant's motion to dismiss plaintiff's TILA claims is granted.

## Conclusion

For the foregoing reasons, plaintiff's motion to amend is respectfully DENIED. Defendant's motion to dismiss the complaint is GRANTED. The Clerk of the Court is respectfully directed to enter judgment and close the case, and send a copy of the Memorandum and Order and the judgment to the plaintiff, and note service on the docket.

**SO ORDERED.**

Dated:     Brooklyn, New York
           September 27, 2020

                              _____/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge